> FORM TO BE USED BY A PRISONER IN FILING
> A CIVIL RIGHTS COMPLAINT

**FILED**

**JUL 2 3 2021**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF OHIO

Theodore W. Smith, III
      Plaintiff,

v.

Ohio Department of
Rehabilitation and Correction et al
      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**3:21 CV 1421**

Case No.

JUDGE **JUDGE JAMES G. CARR**

**MAG JUDGE CLAY**

COMPLAINT

I. **Previous Lawsuits**

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? YES    NO

B. If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit:

Plaintiffs _____

_____

Defendants _____

_____

2. Court (if federal court, name the district; if state court, name the county):

09/09kk

3. Docket Number: ~~████████████~~

4. Name of judge to whom case was assigned ~~████████████~~

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):

_____

6. Approximate date of filing lawsuit: ~~████████~~

7. Approximate date of disposition: _____

II. **Place of Present Confinement:** Toledo correctional Facility

A. Is there a prisoner grievance procedure in this institution? (YES)  NO

B. Did you present the facts relating to your complaint in the state prisoner grievance

procedure?  (YES)  NO

C. If your answer is "yes",

1. What steps did you take? Filed Grievance (pursuant to OAC
5120-9-31(L)) to Chief Inspector of ODRC

2. What was the result? Failed to respond to the attached Grievances
Dated 12/1/20; Follow-up letter Dated 1/10/21; and Grievance Dated 2/16/21

D. If your answer is "no", explain why not:

_____

E. If there is no prisoner grievance procedure in the institution, did you complain to prison

authorities?  YES  NO

-2-

Chief Inspector,

Due to extraordinary circumstances and/or pursuant to E120.9.31(L) I file my grievance directly to your office:

While in segregation I was the victim of an unprovoked/unwarranted use of excessive force by a corrections official (C/O). Please note that I exhausted my institutional remedies via the three(3) step proper informal complaint (I.C.R) notification of grievance (N.O.G) process. After I was released from segregation I was housed in the B3-9-East (cell#'s draw) area of the Trinbo correctional Institution (TCCI).

After several months of civil litigation an arbitration hearing was scheduled for march 12, 2020. The hearing was held via ODRC (agent, me) tele-conference / speaker phone. In the office adjoining unit 2 sergeant Clevengers. At the conclusion of a five hour back and forth the excessive force issue was resolved just and equitably. However, as I was leaving sgt. Clevengers office, and realizing that he had heard most if not all of the arbitration process, the lock on the sat's face told me I was marked. And on march 14, 2020 an inmate porter/trustee named Jones forced a physical confrontation with me when he entered my cell alleging I had taken his property. C/O peppers falsified his conduct report by omitting the fact that Jones entered my cell by virtually knowing my cell door open with me behind him pleading my innocence (see: TCCI-20-002169 conduct report and/or reviews and keep video from 3/14/20 incident for any possible future litigation). Peppers did however, highlight the fact that Jones' knuckles were bruised and my lip was swollen.

I was denied access to the Rules Infractions Board (R.I.B.) process. Thus, I was not allowed to call my witnesses and/or present any physical evidence in my defense. I was later informed, by the R.I.B. chairman Lt. Rockenbaugh, that my presence wasn't necessary as the R.I.B. (Rockenbaugh) relied upon c/o gapers conduct report and a statement given by inmate Jones.

I received 15 days segregation while Jones received only 5 days. When I asked c/o Tveedin for a ~~confinement~~ informed complaint and a kite I was given a kite but was told that inmates (at TOCI) were no longer allowed access to the proper inmate I.C.I. N.O.Co format. Having previously used the three (3) step proper I.C.I. N.O.Co format (to exhaust) I was shook up/confused/frusted.

March 31, 2020, after my release from segregation I was housed in the C·2·south (cell # 17 up) unit area. At the time inmate white (465 027) also known as "speedy" was the C·2·south cell block trustee. That in and of itself, was not unusual. You see, TOCI has a trustee system that consists of four (4) block trustees. Two (2) black and two (2) white. Each two(2) man "team" works a one day on one day off rotation. However, what was unusual about the C·2·south trustee system was that inmate white was the only trustee/porter in the C·2·south cell block (s.u. c.c.). What was more unusual is that, in the three months (march to June) I was in the cell block with white, I observed him in no less than three documented physical altercations that he initiated either with words, spitting on another inmate, or by throwing the first punch. And in each of these incidents the other inmate would receive a rule 4 conduct report (causing harm or attempting to cause harm to another). Inmate white received no violation.

I have observed c/o's give inmate white little "treats" that consisted of extra bag lunches (because of covid-19 meal/movement restrictions) food out of their own lunch boxes and even the personal property of the inmate he instigated the confrontation with. The officer who wrote the conduct report not infrequently the other inmate's personal belongings would simply leave the "treat" (snack/blanket/commissary item) in the cell. And when trustee/porter White took over the cell to "clean up" for the next occupant he would find the treat left behind by the c/o.

June of 2020 white commits a sexual assault upon another inmate in the C-2 south cell block (c-unit 1st or 2nd floor). White was taken to the hole and the cell was sealed and declared a crime scene. After white was taken to segregation the porter/man trustee/porter system was resumed. White was more insidious is that, after having been found guilty of the sexual assault, inmate white was made co-inmate trustee/porter while in segregation.

July of 2020 I received the monetary settlement agreed to at the March 12, 2020 arbitration. And soon thereafter, in what I can only describe as the most blatant show of condoning/promoting sexual misconduct, inmate white is returned to the same (c-2-south) cell unit where he committed the sexual assault June of 2020. More insidious he was positioned on the same range (upper one) two(2) cells away. At the time white was returned to the c-2-south unit I hadn't received a conduct report since the March 12, 2020 incident with inmate trustee porter Jones.

From the moment white returned to the cell block he boasted about having been made a trustee/porter in the "hole" and how he was going to

get his trustie "Job" back again but he was out of segregation. when he asked c/o Hays for his Job back, c/o c asked "what are you going to do for me".

October 5, 2020, at approximately 6:45pm, I was getting my clothes in the locker when inmate while came up on my right side and struck me in the face. He then quickly walked toward c/o cutlip. I followed while and punched him in the side of his face. c/o cutlip stepped in front of me (with his OC spray aimed) and said "Smith if you hit him again I'll blast you"!. Initially, the female who worked with cutlip informed LT. Griswold that, it was a fight. LT. Griswold escorted me to medical and informed them (nurse) that I had been in a fight. (while was taken to the infirmary by another officer) I told the nurse the side of my face hurt.

October 15, 2020 Sgt. Horton read me my conduct report whereupon I discovered, I was not being charged with a fight, I was being charged with a rule 4 (causing harm or attempting to cause harm to another). I also discovered that c/o cutlip, after inventorying my personal property failed to inventory the following items: 1) bags of popcorn $4.00; 2) bags of sugar free lolly packers $6.20; 3) bags of small sugar free candy $2.72 (Please Note: commissary day was october 5, 2020)

c/o cutlip falsified the time of the incident on his conduct report as 8:45 AM. The reason for this falsification is two(2) fold. The first reason was to deny anyone seeking to use the security video too contradict his version of events would be unable to do so. As I said the incident occurred at and/or between 6:00pm and 6:45pm (as 6.2- saw was going to dinner). The second reason he falsified

the time on his conduct report was to cover up the fact that he allowed an inmate/porter to go in my cell and take two (2) personal blankets costing $52.00; my personal pillow $10.00; and 1 blue sweat shirt $14.00 at a total cost of $76.00 minus 13.5% shipping and/or 7.25% sales tax.

Cutlip also falsified his conduct report by alleging that there was an exchange of words between me and [him] (there was not) before punches were thrown. (please review/keep copy of conduct report TOCI-20-007421 and/or review/keep copy of 10:00PM to 6:15pm security video for any future litigation). The security video clearly demonstrates that at Laundry and/or 1:15pm inmate while stabbing me as I'm putting my clothes in the washer (a fact cutting commits). And, if there was an "exchange of words" what were the words? And why wasn't [he] given a conduct report for discussing or at the very least creating a disturbance?!

C/O Cutlip falsified his conduct report 10/9/20 just as C/O Peppers falsified (by omission) his conduct report of March 16, 2020. And here two incidents, involving corrections officers falsifying reports to protect inmate tortfeasors to my physical and financial detriment, clearly demonstrates a pattern. And the timing (days after I finalize a monetary settlement in OCA Claims office/ and/or soon after I start spending the just remedy) demonstrates a clearer motive. And that motive was/is revenge!

October 16 2020 LT. Weirich asked me if I wanted to go to R.I.B. I said yes. I was never allowed to R.I.B. process (please review/keep for any future litigation 10/16/20 approx 10:30AM HDY-E (cell # 116) sound, video). LT. Rockenbaugh and LT. Weirich denying me access to the R.I.B. process further demonstrates a pattern of delaying procedural due process in order to deny full disclosure.

October 17, 2020 the nurse gave me a three (3) day supply of temp (pain) medication. I was given to mertingrexen for the pain I suffered October 9, 2020. 10/18/20 I asked c/o lawrence for 2 kites and 2 informal complaints. When he returned with only 2 kites I asked "what about my informals"?! The c/o stated that as per the written inmates at TOCI were no longer allowed to use the (paper) three step inmate grievance format. I sent my first kite to Deputy warden of operations (DWO) Walters. I sent my next kite to Institutions Inspector (I.I.I) Jenkins. In each of these two kites I related that I was attempting to access the paper three step inmate grievance process but that I was being denied. I also respectfully requested a copy of the memo from the Director of the ODRC and/or his/her designee stating the specified date that TOCI were no longer allowed access to the three step paper inmate grievance process. I sent a kite to warden may requesting the aforementioned memo. October 28, 2020 warden may came to my cell. Thereupon I explained that I wore glasses and I typed maybe two words a minute. I needed to be able to use the three step paper process. When I futher explained that I didn't have my glasses he went to my pickup and brought me my glasses and stated maybe these will help you type faster (Please! Beware and keep for any potential future litigation HD4E see at, video 10:00AM to appox 11:30AM). As of this date I have not been able to access the paper I.I.L. 1V.OC., paper format. Nor have I received a copy of the requested memo from the ODRC Director and/or his/her designee.

Chief Inspector I am a 55 year old man of color with a pre-existing health condition for which I was recently hospitalized

for 5 days. Since that time I've had to be careful with my diet and get at least one(1) hr. of excercise every day. I've also been supplementing my diet with vitamins (E, B-1, C, and calcium D). I've also supplemented by spending $125.00 in the prison commissary. While in segregation I haven't been able to supplement my diet with the aforementioned vitamins either via the prison commissary. And since I can't eat everything that Aramark feeds us my health suffers.

October 17, 2020 fearing a health relapse I kited medical which included a medical request form to medical supervisor Segur. I explained about my preexisting condition / hospitalization and explained that my lack of dietary supplementation was causing me to feel light-headed, weak, dizzy, and was causing me to see dark spots. When, as of October 25, 2020, I had not received a response from Mr. Segur I resubmitted a kite / medical request (for dietary review / supplementation) enclosed. As of the date of this filing I have received no medical review.

Inspector Please notice; October 7, 2020 Ohio was 1 of 38 states that recorded a spike in covid-19 cases. And the county I'm in (Lucas) has been redesignated as a "red zone" by Governor Dewine. October 9, 2020 I'm targeted, by C/O Cutlip, and taken from an incubated cell block, and transferred to a transient segregation cell block with no sterilization protocols. The food is served cold on open trays. And medical services ignores any request for assistance. I live in fear of possible infection and/or death. TOCI is under lock-down and all in person visitation has been cancelled until further notice.

Under Saner conditions the actions of C/O Rogers, C/O Cutlip, LT. Rochebaugh, LT. Werick, Warden May, DWO Walters, IIS Jenkins, and

medical supervisor Segur would be considered thoughtless, cruel and unusual. However, in light of a nation in the midst of a national health emergency, the actions heretofore described by the aforementioned individuals can only be described as monsterous/criminal.

November 7, 2020, upon my release from Segregation, I was told by LT. Ford that my $225.00 TV had been given to another inmate by "mistake" and when the mistake was discovered I was given the TV that didn't work as a replacement. LT Ford said she would look into it (Please review cartkeeg Inmate packing list from October 9, 2020) November 20, 2020 I asked LT. Ford about my TV. She stated "she hadn't gotten around to checking on it"!?. Initially, I believed that the march 14, 2020 incident with Jones and the incident with White were nothing more than a bully, used to winning by any means, wanting vengence against a guy who won by playing by the rules. But November 20, 2020 (as the date indicates) allowed me to see just how unhinged TOCI officials had become because of my civil settlement against one of their fellows.

November 20, 2020 I was sent back to the B-8 unit. the same block where I was assaulted march 14, 2020. Upon my arrival I noticed SGT Clavenger chewing the fat with a couple of c/o's. I said "hey SGT can you help me get my property"? He said I'll look into it. instantly I knew I was stuck! (How could he look into it if he didn't know what it was?) I said "hey man I dont want no trouble all I want is my property". To which he stated "are you going to lock down or go to the hole"? I said

I stated all I want is my property returned to me. He then said nothing!

Chief Taranor please note: what followed took approximatly 57 minutes surely if c/o Clavenger's intent was to assist me he could have escorted me into his office and asked specific questions directly adressing the issue of my property. And his failure to take the time demonstrates he had no intention of taking the time.

After Clavenger had me in handcuffs he came unglued. He started clutching my biceps by the tips of his fingers, so that he knife bit all the while walking fast and force marching me to the stairs and yelling at the top of his lungs "He (squealing of one) is a crack-in" "He's afraid to go into big bad B-Block". Clavenger repeated his refrain all the way to the elevator, which (by design) attracted other c/os. As I was shoved onto the elevator LT was not exiting. Again I stated "all I want is my property returned to me" Clavenger shouted over me repeating "He's a crack-in "He's a crack-in". When the elevator doors closed on us he continued to lose his grip. Clutching ~~clutching~~ my arm and leaning his considerable weight into me he began threatening to fuck me up like he did the last bug-out and no one was going to do shit about it. When the elevator doors opened Clavenger force marched me to the strip cage area. As I was entering the strip cage a c/o, who I could not identify, stuck his foot out and attempted to trip me. The officer in question then began yelling "he tried to kick me" "he tried to kick me". Then other officers began yelling threats and calling me names. But it was all just ease. All a pretense meant to confuse me, provoke me but most importantly to distract me. For as soon as the handcuffs were removed and I turned around c/o Logan discharged his OC spray directly into my eyes. (Please review) (review video of use of force incident) Time 10:45 AM to 11:30 AM)

LT. Ford gave me a use of Force statement. LT was asked if I ~~asked~~ wanted a use of force statement, and LT Weirich asked me if I wanted to file a U.O.F. I said yes.

9

Chief inspector the evidence will reflect that on November 20, 2020 I was in fact the victim of the unprovoked/unwarranted and unreported use of excessive force.

Further c/o Cutlip allowed an inmate/inmates to enter my cell 10/9/20 and take; 2) personal blankets; 1) sweat shirt $14.00; and 1) pillow $10.00 at a total cost of $28.46 plus (49.44) shipping and ($5.77 sales tax). C/o Cutlip further excluded the following items when inventorying my property (10/9/20); 1) popcorn $4.00; 2) Jolly ranchers $4.00; and 3) small candy $2.72. And November 7, 2020 I was told by LT Ford that my $225.00 TV had been accidentally given to another inmate for a combined total of $345.07.

And upon my release from segregation November 20, 2020 I discovered that the following items were not included in my personal property; 37 page $13.69; 4) Noodles $8.64; 2) cereal $6.35; 2) chips $2.24; 4) cheese strips $4.20; 2) snack crackers $2.44; 1) ramen dinner $.98; 3) squeeze cheese $7.05; 1) nutty fudge $1.47; 8) cookies $9.34; 2) BBQ sauce $3.40; 1) ranch dressing $1.40; 1) hot sauce $1.91; 2) oysters $2.50; 2) chex mix $4.35; 2) pepperoni $4.50; 1) summer sausages $11.97; 3) pickle $1.50; 3) Bagels $1.38; 9) Tuna $11.25; 4) spices $5.20; 55) soaps $15.40; 15 kool aid mix $15.00; 12) fruit pies $9.24; 1) Taco shell $1.19; 8) Jelly $.80; 2) peanuts $2.50; and 3) Dry milks $5.04. for a total cost of $149.54 (please never change c/o cutlips inventory of my property) 10/9/20 lock-up ~~~~~~~~~~ Please note: from October 9, 2020 to November 20, 2020 I was on the compact for a total of 24 hours.

Thus, as of the date of this filing, the items stolen from me "mistakenly" given to another inmate, and/or withheld from me add up to a combined total of $459.03, 4.57

149.56

My censure are against the following staff members for the following offences: Warden Mag[?]; Deputy warden tarbert at institutions in[?] denkins; for denying me access to the inmate grievance process via the proper I.C.R. N.C.C. format.

C/O geppert and C/O culligg for using inmate profile[?] jones while threateningly to target me for assault in retaliation for my successful civil action against their fellow C/O. C/O geppert and C/O culligg for falsifying conduct reports against me. C/O culligg for falsifying the time on his October, 2020 conduct report to prevent the detection of his falsified allegations in order to shield the theft of my property from my cell.

LT. Rockinbaugh and LT. weinert, as chairman of the R.I.B., denying me access to the R.I.B. process. LT. weinert, as supervisor of the inmate property cart, allowing my TV to be given to another inmate. LT. ford for her failure to fully investigate my conduct LT. weinert regarding my TV being given to another inmate. Medical supervisor seger for failing to acknowledge my 10/11/20 and my 10/25/20 request for medical assistance. And SGT Ebberger and C/O logan for falsifying conduct reports and thereby attempt to cover-up the unprovoked/unwarranted and unreported use of excessive force against me 11/20/20. I am also grieving the loss of my $149.96 worth of commissary items.

I am requesting your office investigate and disclose the following:

1) copy of the memo from your office, pursuant to 5120-9-31(E)(i), to warden Mag, DWO tarbert, warden JJS denkins directing them to, as of the specified date, deny inmates at TCCI access to the proper I.C.R. N.C.C. format;

2) my complaint regarding C/O geppers and C/O culligg using inmate profile

Porter, Jones and White (respectively) to target me for assault in retaliation for my successful civil action against their fellow officer;

3) Investigate how the inmates (Jones/White) with such disturbing institutional records could obtain the position of trustee;

4) Investigate the fact that C/O Cathy falsified his 10/9/20 conduct report regarding the time of the incident and my cell location (D1/E/112) my actual cell location 10/9/20 was C-2 south cell #112;

5) Investigate how inmate White (LIEE 027) was returned to the C-2 South cell block where he committed a second assault 11/2020;

6) Require that R.I.B. chairman Reterbaugh not LT. Weirich provide signed, dated by me, copy of my right to the 3/2020 and/or 11/19/2020 R.I.B. hearing process;

7) C/O Cleanger and C/O Leganis failure to document the 11/2020 use of force against me;

8) C/O Leganis denying me medical attention and a decontamination shower (11/20/20) pursuant to ODRC 9-01 and/or 104-IAW-02 (D);

9) The theft, 10/9/20, of my blankets, sweat shirt, and pillow from my cell (C-2 South cell #112) between 6:00PM and/or 6:15PM;

10) The inmate who was given my TV from inmate Merrit, while under LT. Weirich's supervision;

11) Locate the whereabouts of my $146.96 worth of commissary items;

12) Set forth, having my 10/11/20 and my 10/25/20 request for medical assistance ignored by medical services.

        Given the serious nature of the aforementioned allegations and given the fact that the named individuals have demonstrated their propensity for the offenses alleged I have reason to fear further retaliation.

        Thus, I am respectfully requesting that your office

8

contact the office of classification and direct any reclassification
to protective custody pending the outcome of your investigation.

Respectfully Submitted

Theodore W. Smith, IV 388608

12/1/20
DATE

Chief Inspector                                    January 10, 2021

    December 1, 2020  I wrote your office regarding the Toledo Correctional Institution (TOCI) Institutions Inspector (I.I.S) Jenkins denying me access to the proper Informal Complaint Resolution (I.C.R) and/or Notification of Grievance (N.O.G.) process. TOCI corrections officers Joggers and calling using inmated porters as hitmen and/or to target me for assault. LT. Hockenbaugh and LT. Weirich denying me access to the Rules Infraction Board (R.I.B). My being denied medical attention by medical tech. Segur. The unreported use of Force by Sgt. Clawenger and corrections officer Logan. And the theft/loss of my property while in the custody of TOCI staff.

    Inspector In my complaint to your office I emphasised that the reason for the aforementioned actions/violations was in retaliation to my civil litigation against a corrections official for the unreported use of excessive force against me.

    As of this date I have not received a response from your office. I am respectfully requesting your office respond to my December 1, 2020 complaint.

                Thank you

                Theodore W. Smith, III #588608

Chief Inspector                                        February 16, 2021

12/1/20, due to extra ordinary circumstances and/or pursuant to AR 5120-9-31(H), I filed my grievance directly to your office. As of 1/10/21 I had not received a response from your office regarding my complaint(s). Thus, I sent your office a follow-up letter briefly outlining my issues as documented 12/1/20. As of this date I have not received a response from your office regarding my 12/1/20 grievance and/or my 1/10/21 follow-up letter. Thus, I am resubmitting my grievance to your office via certified mail.

Chief Inspector, while in segregation I was the victim of an unprovoked/unwarranted use of excessive force by a corrections officer (c/o). Please Note: I exhausted my institutional remedies via the three (3) step pagel informal complaint (I.C.R)/notification of grievance (N.O.G.) process. After I was released from segregation I was housed in B2-E (first door) area of the Toledo correctional Institution (ToCI).

After several months of civil litigation an arbitration hearing was scheduled for march 12, 2020. The hearing was held via an ODRC open-line/landline teleconference speaker phone in the office of adjoining unit B sgt. Clevengers. At the conclusion of the five (5) hour hearing the excessive force issue was resolved justly and/or equitably. However, as I was leaving sgt. Clevenger's office, and realizing that he had over heard most, if not all of the arbitration process, the look on the sgt's face warned me that though the civil process had been resolved the matter wasn't concluded.

And on march 16, 2020 my fears were realized.

March 14, 2020 an inmate porter/trustee force a physical confrontation when he entered my cell alleging I had taken his property. C/O peppers falsified his conduct report by omitting the fact that none of the inmate porter/trustee's property was taken from my cell. And that it was the inmate porter who entered my cell, with me following the inmate pleading my innocence (see: TOCI-20-002105 conduct report and/or review and keep for future litigation security video from march 14, 2020). C/O peppers did however, highlight the fact that anytiguous bleeding/swollen. I was denied access to the Rules Infraction Board (R.I.B) process. Thus, I wasn't allowed to call any witnesses and/or present any video evidence. I was later informed, by then R.I.B. Lt Rodenbauah, that my presence at the hearing wasn't necessary because he relied upon C/O peppers conduct report and/or the confidential statement given by the inmate porter who entered my cell. When I requested access to the paper I.C.R/ N.O.C. process. C/O Tresslen informed me that TOCI inmates were no longer allowed to use the 3 step paper I.C.R/NOC process.

March 31, 2020, after being released from segregation, I was housed in the C.3-South unit (Cell #17up). At that time inmate white (A85027) was the C south cell block trustee/porter. That, in and of itself, was not unusual. You see, TOCI has a trustee/porter system that is composed of two(2) two(2) man "teams". These teams consist of 2 white porter/trustees and 2 black porter/trustees. And these two man teams work on a one(1) day on one(1) day off rotation schedule. What was unusual was that inmate white was the only porter/trustee for the C South cell block. And in the three months that I was in the cell block with white I observed him in no less

than three documented physical altercations that he initiated either with words, by spitting, or by throwing the first punch. And in each of these incidents the other inmate would receive a rule 4 conduct report /violation (causing harm or attempting to cause harm to another) while inmate white received no rules violation/ conduct report. I observed corrections officers give inmate white little "treats". These treats consisted of extra bag lunches (while TOCI was on partial lockdown / limited movement because of covid-19), food out of their lunch / dinner trays, and in one instance a c/o gave white the property of the inmate he initiated the confrontation with. June of 2020 white committed a sexual assault against another inmate in the c south cell block area (cell #19 or #20 down), white was taken to segregation and the victims cell was determined to be a crime scene.

July of 2020 I received the monetary settlement agreed to at the march 12, 2020 arbitration. And soon there after white was returned to the c south cell block. The same cell unit where he committed his sexual assault. And from the moment he returned to the cell block white boasted that he would get his trustee / gordor "Job" back. Please Note: At the time white was returned to the c south unit I had not received a conduct report since the march 16, 2020 incident (with trustee/porter Jones). October 5, 2020 (on/or about) white asked then c/o harris for his "Job" back to which another c/o responded "what are you going to do for me". October 9, 2020 at approximately 6:15 pm c/unit was going to dinner / chow. During the movement I was putting my clothes in washer #3 when white crept up on my right side and struck me in the Face and walked quickly toward c/o railing.

a hurried after-swipe and when I was along-side of him I struck him in the side of my face. C/O Cutlip stepped in front of me and stated "Smith if you hit him again I'll blind you" (he was holding his ero spray). Initially, the female c/o working with cutlip observed Whites actions, prior to my own, and later told Lt. Conswald that White and I had been fighting. Lt Conswald escorted me to medical and informed the attending nurse that I had been in a fight. I informed the nurse that I had been struck on the side of my face and but it hurt. I was subsequently taken to segregation where I wrote a statement for Lt. Conswald regarding an altercation with White.

October 2, 2020 Sgt. Morrison read me my conduct report whereupon I discovered that I was not being charged with fighting white. I received a conduct report for a rule 4 violation. C/O Cutlip falsified his conduct report in the following manner and/or for the following reasons: Cutlip falsified the time the incident occurred and he falsified the cell block unit in which the incident occurred. He did this to ~~deny~~ confuse anyone seeking to verify the time/unit where incident occurred. Cutlip falsified the allegation against me as a form of quid-pro-quo: White does something for him (assault me) and he doesn't have to go to hole/gets his porter/trustee position back. Another reason cutlip falsified the time and the cell unit location is because he wanted to deny anyone reviewing this matter the ability to use the security index and observe the fact that while inventorying my personal property he left my cell door open and allowed an inmate to go into my cell and take two(2) personal blankets, a pillow, and a army three sweat suit. Further, while inventorying my property cutlip failed to inventory: (a)bag of chips (b),(c);

2) Bags of Sugar free Jolly ranchers $16.20; one 1 Bag of Sugar free candy $2.72, items totaling $18.92. The Two Heaters cost $24.95 a piece and one sweat shirt cost $14.00. Total cost of these items $67.90 (Please review copy of conduct report TOCT·20·007421 and Review/view conduct report copy of the C·South unit security video/my cell was C·2·South #17 up). The C·South unit went/ shopped at the prison commissary October 5, 2020. I spent approximately $125.00. October 5, 2020 C/O Cutlip listed the following commissary items as contraband: 37 gap; $13.69; 4) Nachos $5.64; 2) cold cereal $6.35; 2) chips $2.24; 2) Snack crackers $3.42; 1) Lemon Juice $.98; 3) squeeze cheese $7.65; 1) milky fudge; 8) cookies $9.36; 2) Bar-B-Q sauce $3.40; 1) Ranch Dressing $1.60; 1) hot sauce $1.91; 2) oysters $2.50; 3) chex mix $4.35; 3) Pepperoni $4.50; 7) summer sausages $11.97; 3) pickles $1.50; 3) Bagels $1.29; 5) Tuna $11.25; 4) spices $5.20; 55 soups $15.40; 15) cool Aid mix $15.00; 12) Fruit Pies $9.26; 1) TACO shell $1.19; 8) Jelly $4.80; 2) Peanuts $2.50; and 3) Dry milks at a total cost of $149.96 (Please Review/view cutlips conduct report NO: TOCT·20·007419)

October 16, 2020 LT Werich (werich) asked me if I wanted to go to the R.I.B. I said yes (Please Review/view for any future litigation Security video from the HD4·East/cell #11.9 at approximately 10:30am) I was not allowed access to the R.I.B. process. I later discovered that I had been given 15 days D/C. White, who did not receive a conduct report/rules infraction for his assault upon me was returned to the C·South cell block unit and reinstated as the C·South unit trustee/Porter.

C/O Peppers falsifying this conduct report March 16, 2020 and C/O cutlip falsifying his conduct report october 5, 2020 to protect the inmate trustee/porters they used to my physical and/or financial detriment clearly demonstrates a pattern. And the timing (days

after I finalize a monetary settlement in Sgt. Clevenger's off, air ar/or soon after I received the monetary settlement) demonstrates a clear motive. And that motive is retaliation for my civil action against a corrections official for excessive force.

Lt. Rockenbaugh ar/or Lt. weirich denying me access to the 3.1.B process further demonstrates a pattern of retaliation by denying me procedural due process in order to deny me full disclosure. October 17, 2020 nurse layton gave me a three (3) day supply of every medication (for the pain I suffered from being stuck in the face) etc. w/ or approx on October 18, 2020 I asked c/o lawrence for 2 kites and 3 informal complaints. When lawrence returned with only 2 kites I asked him about the 3 informal complaints. Lawrence stated "as per the written inmates at TOCI were no longer to be given access to the (proper) three step inmate grievance process. After receiving another kite I sent 1) kite to the warden; 2) kite to the Deputy warden of operations and 3) kite to the institution's inspector. In each of these kites I related that I was attempting to access the three step proper inmate grievance procedure but that I was being denied. I also requested a copy of the memo from the Director / chief inspector stating the expected date the rule was to have taken affect and/or the reason(s) for the new rule. October 21, 2020 at approximately 11:30 AM warden may was walking the Segregation HDHE range when he approached my cell (HD-1-E-11) I explained to warden may that I wore glasses and I typed maybe 2 words a minute. Thus, I needed access to the three step paper grievance process. Warden may went to my pick-up (personal property) got my glasses, and stated maybe these will help you type faster (

Please review and keep MD4-E ~~video~~ (range security video)
As of this date I have not been able to access the three (3) step
paper inmate ICP/MOCc process. Nor have I received a copy
of the requested memo from the Director/Chief inspector.
As previously stated, subsequent to being the victim of excessive
force, and prior to my civil litigation, I used the three (3) step
paper inmate I.C.P./M.O.Cc process to exhaust my institutional
remedies. Thus, I believe that warden may's unwritten policy
of denying me access to the paper ICP/MOCc process demonstrates
a desire to deny me procedural due process in retaliation for my
civil litigation against a corrections officer. I further contend that
without the cooperation of TOCI Institutions Inspector Jenkins the
warden's unwritten policy could not ~~have been implemented~~ have been implemented.

    Chief Inspector, I am a 54 year old man of color with
a pre-existing health condition for which I was recently hospital-
ized. Since my hospitalization I have had to be careful with my
diet. And get at least one (1) hour of exercise everyday. I also
supplement my diet with Vitamins (B-1, C, E, Calcium D, and Zink)
and by spending $125.00 in the prison commissary (every two weeks).
While in segregation I have not been able to supplement my diet with
either my vitamins or the $149.95 worth of commissary and/or the $18.92
worth of excluded commissary items previously mentioned. My cell is cold
and without the three (3) blankets that are being allowed the inmate to
steal (10/6/20) the cold seeks to become unbearable. I cant eat
everything that Aramark feeds us. ~~thus~~ thus, without the aforementioned
supplementations I fear my health is starting to suffer.

    October 17, 2020 fearing a relapse and/or another hospitalization

a kited medical assistant Segur. The kite included a medical request form explaining my pre-existing condition/hospitalization. I also informed Segur that my lack of dietary supplementation was causing me to feel light headed, I was weak, suffering dizzyness, and seeing dark spots. When, as of October 25, 2020, I had not received a response from Segur/medical I resubmitted a kite with the requisite medical request form attached. As of the date of the initial filing I have received no medical attention.

Inspector, please note: October 7, 2020 Ohio was 1 of 28 states that recorded a spike in covid-19 cases. And the county that I am in (Lucas) has been re-designated as a covid-19 Red Zone, by Governor Dewine. October 9, 2020 c/o Cutliq use Trustee/porter write to target me for assault. I'm then taken from a sterile/incubated cell block and subsequently transferred to transient seg. unit with no sterilization protocols, where the food is served cold and on open trays. And medical services ignores my requests for medical assistance. In an institution that is on lock-down/all in person visitation has been cancelled until further notice. I'm in a cold cell freezing/living in fear of infection and/or death.

IF taken seperately it would appear that I am the victim of a chain of unfortunate events. However, if seen in the light of my allegation(s) of retaliation, the actions of c/o peppers; c/o cutliq; LT. Rockebaugh, LT. weirich; warden may, DWO walters, JIS Jenkins, and/or medical assistant Segur can only be construed as malicious and/or sadistic.

November 7, 2020, upon my ___ release from segregation I was informed by LT. Ford that my brand new #225.00 TV had been

given to another inmate by mistake. When I asked what inmate she
said she would find out (please Remar on nlog 10/9/20 packing list)
November 20, 2020 I asked LT. Ford ~~xxxxxxxx~~ was she able to find
out who had been given my TV. She stated she hadn't gotten around
to checking on it. At this point, if I had any prior doubts, I knew
I was the victim of a type of physical abuse and/or economic
aggression the likes of ~~xxxxxxxxxxx~~ which I had never experienced. But little
did I know it was about to get a whole lot worse. November 20, 2020
I was sent back to B-unit. The same Block (B349E) where I had the
shar arbitration hearing (in set clevenger's office). The same unit where
c/o peppers used inmate trustee/porter jones to target me for assault.
When I arrived in the hallway area of B-unit it appeared that set clevenger
was waiting for me (he was standing outside of his office). When I asked
clevenger to help me recover the $4460.70 in property that hadn't been
returned to me he said he'd look into it. I said hey man I don't want
any trouble ~~xxxxxx~~ all I want is my property. To which he responded "are you going
to lock down or go to the hole". I said all I want is some help getting
my property back. He said cuff up. After he secured me in handcuffs
clevenger seemed to come unhinged. He savagely clutched my bicep
(by the tips of his fingers) so tight that his nails bit into my skin. All
while force marching me out of the B-unit hallway, and yelling at the
top of his lungs "he (meaning me) is a check in" "he's afraid to go into
big bad B-unit". When we reached the bottom of the stair case ~~xxxxxx~~
he continued to clutch my ~~bicep~~ bicep/force march me out ~~yelling~~
which attracted other c/o's. It became obvious to me that clevenger
was clutching my arm, force marching me, and yelling that I was
a checkin, not because it was necessary. He was doing it to try to

elicit a response from me to justify a more overt use of force.
When we reached the elevator, and his covert attempts to elicit a
suitable response from me had failed, when the doors opened clavenger
shoved me into the elevator. LT. Wyns, who was exiting the elevator, looked
perplexed but not surprised, I stated, out loud, all I want is my property
returned to me. At that point clavenger shouted over me stating
"he's a check-in, he's a check-in". Wyns stepped off the elevator. When
the doors closed clavenger renewed his fierce gaze on me, and
and leaning his considerable bulk into me he stated "boy, I'll fuck
you up like I did that other big ride and aint no body going to do
shit about it. When the elevator doors opened clavenger force
marched me to the strip cage area. As I was forced to enter the strip
cage one of the accompanying c/o's stuck his foot out and
attempted to trip me. As I attempted to maintain my ~~balance~~ balance
the same c/o (later identified as c/o Logan) began yelling "he tried to
kick me" "he tried to kick me". The other officers present began yelling
threats at me and calling me names. Seeing through this pretense
I was able to discern the reason for it. The officers actions/words
were meant to confuse me, provoke me, and most importantly their
actions were meant to distract me. For as the cell/strip ~~cage~~ case door
was closed and as soon as the handcuffs were removed c/o Logan
discharged his O/C spray directly into my eyes. (Precise Perrew
and/or Keeg strip cage video 11/20/20 approx. Motley 10:45/11:20
AM) LT. Wyns asked me if I wanted to file a use of force statement.
I said yes. LT Ford provided me with the use of force statement ~~and/or~~.
~~~~ November 25, 2020 I reviewed the conduct Reports written by
c/o Logan (see: ~~c/o EVINS~~ ~~EVINS WILLIAMS~~ TOCI-20-008449) and ~~sgt~~ clavenger (see: TOCI-20-008450)

Logan falsified his conduct report alleging that I made "a hocking noise and/or gathered spit in my mouth in preparation to expel it on staff". He falsified these allegations in a misguided effort to justify his unwarranted/unjustified use of (OC spray) excessive force. I can only surmise that Logan realized his spitting allegation made no sense (I was wearing a covid-19 mask) thus, he falsified his conduct report further by failing to document his use of OC spray against me. December 8, 2020, after reviewing the 11/20/20 sting case security video, R.I.B. chairman LT. Miller found me not guilty of the Rule 18 violation (Throwing, expelling, or otherwise causing a bodily substance to come in contact with another.)

Clavenger falsified his conduct report by omitting the force he used to march me from the B-unit building to the elevator and/or to the sting case. He further falsified his conduct report by alleging that I kicked him as I was being force marched into the sting case area. December 8, 2020, after reviewing the 11/20/20 sting case security video, R.I.B chairman LT. Miller found me not guilty of the Rule 4 violation (causing, or attempting to cause physical harm to another. In his conduct report Clavenger did document that medical was called. This was done in accordance with ODRC code/Rule 104-TAW-03(D). After being "maced" I experienced pain, loss of eye sight, and breathing difficulty.

December 8, 2020, upon my release from segregation I discovered that the following items, listed on my property receipt were not included in my property: 1) GTL Tablet $200.00; 1) JP4 player $74.00; 1) JP5 player $160.15; 1) fan $19.05; and 1) Lamp $12.45.

Sgt Randall was present 12/8/20. He inspected my cell and/or property items and can attest to the fact that the afore mentioned items listed on my property receipt were not in the property I received (cost of items $455.85)

This, from october 9, 2020 to December 8, 2020 aside from the verbal and/or physical abuse I had to endure the property items taken from me amounted to $932.22. Inspector the evidence clearly demonstrates that I am the victim of physical/verbal abuse and/or economic oppression in retaliation for my civil litigation against a corrections officer for excessive force and/or the monetary settlement I received subsequent to that civil litigation.

My grievance is against the following staff members for the following offenses: warden May: For his undocumented policy denying me/inmates at TOCI access to the three (3) step paper inmate grievance process; DWO Walters: Adopting/permoting warden may's undocumented policy; Institution Inspector Jenkins: For warding warden may's undocumented policy by ensuring that I/inmates at TOCI could no longer utilize the 3 step paper ICR/NOCI process; C/O paggers and C/O Cullip: for using trustee/porter Jones and white respectively to target me for assault. And subsequently falsifying their conduct reports to cover up the fact; R.I.B LT. Archenbright and R.I.B. LT. weirich:for denying me access to the R.I.B hearing process; Medical assistant Segur: for failing to respond to my medical requests and/or his failure to provide adequate medical attention. And Sgt. clewenger and C/O Logan: for the use of excessive force and for their failure to document their individual use of force. And for falsifying their conduct reports to cover up their actions. And lastly LT. weirich for the theft/loss of $942.22 of my personal property while under his supervision.

and/or while in his custody or supervision of the inmate(s ie correction) property vault.

        Inspector I am also requesting the following:

1) a copy of the memo from your office to warden may specifying that inmates at TOCI were no longer allowed access to the three (3) step paper ICR/NOGR process;

2) Your office investigate C/O preppers/co calling using Jones/while as hit men;

3) Investigate how inmates Jones/while were allowed positions as trusted porters;

4) How/why inmate while was returned to the C-south cell block. The same cell block where he committed a sexual assault.

        In Conclusion, Inspector for the purposes of full disclosure I have carbon dated copies of my December 1, 2020 and my January 10, 2021 conveyance and follow-up letter respectively. I am respectfully requesting that your office investigate these matters and provide me the assistance your investigation warrants.

        Respectfully

        Theodore W. Smith, II #666608

F. If your answer is "yes",

    1. What steps did you take? _____

    _____

    2. What was the result? _____

    _____

## III. Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of the Plaintiff _Theodore W. Smith III_ #688608

   Address _2001 East Central Avenue Toledo, Ohio 43608_

(In item B below, place the full name of the defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Use item C for the names, positions and places of employment of any additional defendants.)

B. Defendant _Ohio Department of Rehabilitation and Correction d.d_ is employed as _Supervisor_ at _Toledo Correctional Institution_

C. Additional Defendants

_WARDEN MAY; DWO WALTERS; JIS JENKINS; CO Rogers_
_CO rutlin; LT. Rockenbough; LT. Weirich; medical supervisor sesur; SGT _____  LT. Ford; Klauenger;_
_CO Logan; CO Hilton; LPN A. Shawman; LPN C. Klocinield; and Chief Inspector Doe_

## IV. Statement of Claim

(State here the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite

any cases or statutes. If you intend to allege a number of related claims, number and set forth

each claim in a separated paragraph. Use as much space as you need. Attach extra sheet(s) if

necessary.)

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under the color of law, of rights secured by the constitution of the United States. This court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. section 2201 and 2202. The Northern district is an appropriate venue under 28 U.S.C. section 1391(b)(2) because it is where the events giving rise to this claim occurred.

This claim involves the defendant's retaliation, beginning March 16, February 16, 2020 and culminating _____, 2021, against the plaintiff, for exercising his First Amendment right to Protected conduct. Fourteenth Amendment's right to due process and/or for his successful civil litigation against the defendant's officer for his unwarranted/unprovoked/unreported use of excessive force. The Defendant's actions were so egregious in this case, that we respectfully contend that the duration of the deprivations and/or the totality campaign of harassment/First of conditions constitute a violation of the "Eighth and Fourteenth Amendments to the United States Constitution:

Plaintiff, Theodore W. Smith, III, was at all times mentioned herein in the custody of the Defendant, Ohio department of Rehabilitation and correction et al. He is currently incarcerated at the Toledo Correctional Institution ("TOCI").

Defendant, Warden MAY,
1. _____ at all times mentioned herein was responsible for the over-

-4-

all operation of TOCI; Defendant 2) Deputy warden (DWO) Walters: at all times mentioned

(Statement of Claim continued)

herein was responsible for the day to day operations of TOCI; Defendant 3) IIS Jenkins:

at all times mentioned herein was responsible for the inmate grievance oversight TOCI;

Defendant 4) corrections officer ("C O") Roggers: at all times mentioned herein was the

2nd shift B3/4 C block unit officer; Defendant 5) C O Cutlip: at all times mentioned herein

was working the C2/15 south unit; Defendant 6) LT Rochenbough: At all times mentioned

herein was the Rules Infraction Board ("RIB") chairman and was tasked with hearing all

RIB conduct violations by TOCI inmates; Defendant 7) LT. weirich: At all times mentioned

herein was replacement (RIB) chairman tasked with hearing all RIB conduct violations by

TOCI inmates; Defendant 8) medical ~~Health Care Administrator~~ Tech sequr: At all times mentioned herein was

tasked with overseeing the medical care of TOCI inmates; Defendant 9) LT. Ford: At

all times mentioned herein was the 1st shift floor supervisor at TOCI; Defendant 10) ~~Correctional Sergeant~~

Sgt Klavenger: At all times mentioned herein was the Sgt for the B-unit at TOCI;

Defendant 11) C O Logan: At all times mentioned herein was working in the segregation

in-take unit ~~within TOCI~~ area at TOCI; Defendant 12) C O Walton: at all times mentioned herein

was working as escort officer at TOCI; Defendant 13) LPnurse A. Showman: At all times

mentioned herein was a nurse at TOCI tasked with providing medical care to all TOCI inmates;

Klocinski
Defendant 14) LPnurse C. ~~Wishbonewished~~: At all times mentioned herein was a nurse at TOCI

tasked with providing medical care to all TOCI inmates; And Defendant 15) Ohio Department

Chief
of Rehabilitation and corrections ~~chief~~ Inspector DOE: At all times mentioned ~~Dee~~ herein was

tasked with responding to grievance/appeals from all ODRC inmates.

-5-

Statement of Claim cont: The Plaintiff, while in segregation was the victim of an ungrounded/unwarranted/unreported use of (Continued on page 7)

## V. Relief

(State briefly exactly what you want the court to do for you. Make no legal arguments. Do not give any legal arguments or cite any cases or statutes.)

Wherefore Plaintiff prays that this court enter Judgment granting plaintiff:

1) A declaration that the acts and omissions described here in violated Plaintiff's rights under the constitution and laws of the United States;

2) Punitive damages in the amount of 5 million dollars against each named defendant jointly and severally;

3) A jury trial on all issues triable by jury;

4) Plaintiff's costs in this suit;

5) Any additional relief this court deems Just, Proper, and Equitable

Signed this  25  day of  June  , 20  21  .

I declare under penalty of perjury that the foregoing is true and correct.

6 / 25 / 21
_____
Date

_____
Signature of Plaintiff

-6-

excessive force by a correction a corrections officer (c/o). Prior to pursuing a civil complaint the plaintiff (hereinafter mr. smith) exhausted his institutional remedies via the three (3) step (paper) inmate grievance process pursuant to Ohio Administrative Code ("OAC") 5120-9-01(J)(1), (2), and (D). After I was released from segregation I was housed in the B3/E2 (cell 8) area of the Toledo correctional Institution ("TOCI").

After several months of civil litigation an arbitration hearing was scheduled. Due to security concerns, the arbitration hearing was held in the office adjoining sgt. Klavenger's via ODRC open-line/speaker phone (march 12, 2020). At the conclusion of the five (5) hour hearing the excessive force issue was resolved Justly and/or equitably. However, as mr. smith was leaving sgt. klavenger's office, and realizing he had overheard most, if not all, of the arbitration process, ~~correspondence~~ the look on Klavenger's face warned him that though the civil process had been resolved the issue wasn't concluded. And march 16, 2020 mr. smith's fears were realized, for march 16, 2020 an inmate porter/trustee force a physical confrontation with mr. smith by falsely alleging that mr. smith had stolen "his property". co peppers falsified his conduct report, by omitting the fact(s) that: none of the inmates property was taken from mr. smith's cell; And that it was the inmate/porter who entered my cell with mr. smith following close behind pleading his innocence. Peppers did however highlight the fact that mr. smith's lip was swollen/bleeding. LT Rockenbaugh denied mr. smith access to the R.I.B process. LT Rockenbaugh relied upon co pepper's conduct report and the statement by the inmate/porter. When I requested access to the (paper) three step inmate grievance process c/o Tresdon informed me that as per the warden/DWO/IIS Inmates at TOCI were no longer allowed to use the three step paper inmate grievance procedure.

March 31, 2020, after being released from segregation, Mr. Smith was housed in the C2 / south cell #17 up area. At that time inmate White was the C2 south unit cell block porter / trustee. That, in and of itself, was not unusual. You see, TOCI has a trustee / porter system that is comprised of two (2) two (2) man "teams". And these teams consist of two (2) White and two (2) Black inmates that work on a one day on and one day off schedule. What was unusual about the trustee / porter system in the C2 south unit, at that time, was that inmate White was the only porter / trustee in the C2 south cell block. And in the ~~three (3) months~~ that Mr. Smith was in the cell block with inmate White he observed the trustee / porter in no less than three (3) altercations that White initiated with words, by spitting, and/or by throwing the first punch. And in each of these incidents the other inmate would receive a rule 4 conduct report (causing harm or attempting to cause harm to another) while White would receive no conduct violation at all. Thus, he would resume his "duties as a trustee / porter. Mr. Smith observed officers give White little "treats". These treats consisted of extra bag lunches (while TOCI was on partial lock down due to covid-19 health restrictions), food directly from officers lunch boxes, and in one instance an officer gave White the property (shoes) of the inmate he initiated the confrontation with. June of 2020 White committed a sexual assault against ~~another~~ an inmate in the C2 south cell block (cell #18 or #20 down). White was taken to segregation (where he subsequently became a trustee / porter). And his victims cell was determined to be a crime scene.

July of 2020 I received the monetary settlement agreed to at the March 12, 2020 arbitration. And soon there after White was

returned to the C 2 south unit where he committed a sexual assault June of 2020. And from the moment he entered the unit white boasted that he was going to get his "job" back. At the time white was returned to the unit mr. smith had not received a conduct report for a rules violation since the march 14, 2020 incident with the C unit trustee/porter.

October of 2020, as officer's were making their rounds, white could be over heard asking c/o Harris for his "job" back. To which c/o Cutlip asked "what are you going to do for me". October 9, 2020 at approximately 6:00 pm the C-2 south unit was on dinner movement. During the movement mr. smith was putting his clothes in the number (3) washer when white crept up on his right side, struck mr. smith in the side of his face, and walked quickly toward c/o Cutlip. Mr. smith quickly followed white and subsequently punched him in return. Cutlip then jumped in front of mr. smith, with his oleoresin capsicum (OC) spray drawn, and told mr. smith that if he struck white again he would blind him. Initially, the female officer working with Cutlip, told LT. Griswald that white and mr. smith had been fighting. And, after escorting mr. smith to the medical unit, LT. Griswald informed the attending nurse that mr. smith had been in a fight. The nurse prescribed/ordered medication for pain and mr. smith was escorted to segregation whereupon he wrote a statement for the LT. However, october-15, 2020, Sgt morton read mr. smith the conduct report written by cutlip and instead of charging mr. smith with fighting he was charged with a rule 4 (causing harm or attempting to cause harm to another). White received no conduct report for any rules violation. Thus, mr. smith was held in segregation while white was returned to the C-2 South unit and allowed to resume his duties as a TOCI trustee/porter.

9

Cutlip falsified his conduct report in the following manner and/or for the following reasons: 1) Cutlip falsified the allegation of the rule 4 to ensure that Mr. Smith would be kept in segregation; 2) Cutlip falsified the time and the location of the October 9, 2020 incident to ensure that anyone investigating his version of events would be hindered by his misinformation. for, while inventorying the personal items in Mr. Smith's cell, Cutlip left Mr. Smith's cell door open and allowed an inmate porter/trustee to go into Mr. Smith's cell and take two (2) personal blankets; his sweat shirts, and personal pillows. Further, while inventorying Mr. Smith's property Cutlip failed to include food items totalling $15.92. Let the record reflect that the C-2 south unit shopped at the prison commissary on October 5, 2020 Mr. Smith spent $125.00. However, October 9, 2020 Cutlip wrote Mr. Smith a conduct report for Contraband. Thus, confiscating $149.96 worth of food items from Mr. Smith.

October 16, 2020 LT. Weirich asked Mr. Smith if he wanted to go to the Rules Infraction Board ("RIB") to answer the allegations written by Cutlip. Mr. Smith said yes. He was never allowed access to the RIB process and only later discovered that he had been given thirty days segregation.

C.O. peppers and/or C.O. cutlip using inmate trustee/porters to assault Mr. Smith and by then falsifying their conduct reports to ensure that Mr. Smith suffered the hardship of segregation and/or the loss of his property constitutes violations of the First Eighth Amendment and fourteenth amendment to the United States Constitution.

LT. Rockiebaugh and/or LT Weirich denying Mr. Smith access to the RIB process after the march 16, 2020 and/or the October 9, 2020 incidents, respectively, demonstrates a violation of the First Eighth Amendment and the fourteenth amendment to the United States Constitution.

October 17, 2020 nurse Layson gave mr. smith the pain medication for the injury he suffered October 9, 2020. October 18, 2020 mr. smith asked segregation c/o Lawrence for two (2) kites and two informal complaint (ICR) forms. When Lawrence returned he gave mr. smith two (2) kites. When mr. smith questioned Lawrence regarding the ICR forms Lawrence stated that as per warden may inmates at TOCI were no longer allowed access to the paper three (3) step inmate grievance process. After receiving an additional kite mr. smith sent one kite to warden may; one kite to DWO walters; and one kite to IIS Jenkins. In each of these kites mr. smith related that he was attempting to access the inmate grievance (paper) process/procedure but that (he) he was being denied. (he) He also requested a copy of the memo, from the Director of the ODRC and/or the Chief Inspector, specifying the date the rule was to have taken effect and/or the reason(s) for the new rule. October 22, 2020 mr. smith received a response from IIS Jenkins. Enclosed was a nine (9) step instruction to access the new inmate grievance procedure. October 23, 2020 mr. smith received a response from DWO walters informing mr. smith to use JPAY. October 28, 2020 at approximately 11:30 am warden may stopped at (his) cell at which time (mr. smith) informed him about the kite (he) had sent him and informed him that due to the time constraints; (his) lack of typing skills, and the fact that (he) didn't have (his) glasses all necessitated (he) that have access to the three step paper inmate grievance process. Warden may subsequently went to (mr. smith's) personal property returned with (his) glasses and stated "maybe these will help you type packer".

Warden May, DWO Walters, and IIS Jenkins denying me access to the three step paper inmate grievance procedure pursuant to OAC 5120-9-31 (J)(1)(2) and (3) constitutes a violation of the (first,) Eighth and Fourteenth Amendments to the United States constitution.

As of October 9, 2020 The united States of America, and Ohio in particular, was in the grip of covid-19. The worst health crisis in over a century. Mr. Smith was housed in the C-2 south cell unit. An incubated/isolated cell block frequently sanitized and administered covid-19 testing. Mr. Smith was a 54 year old man of color with a preexisting health condition for which he had been recently hospitalized. Thus, he had to be careful with his diet and be sure to exercise regularly. Mr. Smith supplemented his diet via the prison commissary and/or by vitamins B-1, C, D, and Zinc. Subsequent to October 9, 2020 Mr. Smith was housed in a cold (his blankets had been taken) transient segregation cell. Where there, was no regular cell decontamination, and the food was served cold on trays without lids. Mr. Smith was not able to supplement his diet by either the prison commissary or his vitamins (they had been withheld by cutlip). Thus, being unable to eat all of what was on his food trays and with no way to supplement his diet, Mr. Smith became weak and unable to exercise. October 17, 2020, fearing covid-19 infection and/or a relapse that could lead to a hospitalization, Mr. Smith kited medical Tech Segur. The kite included a medical request form explaining his special circumstance as they applied to covid-19. He also informed Segur that his lack of dietary supplementation was causing him to feel light headed, weak, dizzy, and/or caused him to see dark spots. When as of October 25, 2020, Mr. Smith had not heard from Segur he resubmitted his kite/medical request form. However, Mr. Smith was never seen nor treated by medical services.

Medical Tech/supervisor Segur's failure to see Mr. Smith, in the midst of a global health pandemic, clearly constitutes a violation of the Eighth Amendment to the united States constitution.

November 7, 2020, upon his release from segregation, LT Ford

informed mr. smith that his brand new TV ($225.00) had been given to another inmate by mistake. When he asked what inmate Ford stated one would find out. November 7, 2020 mr. smith was in a physical altercation with an inmate who claimed to have been given (his) new TV. November 20, 2020 upon his release from segregation mr. smith asked LT Ford the name of the inmate who had been given his TV. Ford stated "she hadn't gotten around to it yet", November 20, 2020 mr. smith was to be housed in the B3/4 East cell block unit. The same cell block where he had the short arbitration hearing. The same unit where C/O Reppers targeted him for assault. When mr. smith arrived in the B-unit bullpen area Scot Klawenger was waiting for him as though anxious for his arrival. When mr. smith asked Klawenger for help recovering over $460.70 worth of his personal property. Klawenger responded that he would look into it. To which mr. smith responded that he didn't want to cause any problems he just wanted his property. Klawenger stated are you going to lock down or go back to the hole. Mr. smith pleaded but all he wanted was the $460.70 worth of property that had been lost/stolen. Klawenger told mr. smith to cuff-up. After he had mr. smith secured in the handcuffs Klawenger seemed to come unhinged. He savagely clutched mr. smith's bicep (with the tips of his fingers) so tight that his nails bit into mr. smith's skin. All while force marching him out of the B-unit bullpen and yelling at the top of his lungs "he" (meaning mr. smith) is a check in, he's afraid to go into big bad B-unit". When Klawenger force marched mr. smith to the bottom of the steps he continued his savage grip on mr. smith's bicep and continued to force march mr. smith while continuing to yell at the top of his lungs which attracted officers. It was obvious that Klawenger's clutching mr. smith's arm was meant to elicit a violent reaction from mr. smith which it did not. The force marching of

Mr. Smith by Klaveyer was meant to make it appear that Mr. Smith was resisting. Which he was not. And the yelling was meant to call other officers which it did. When Klaveyer had force merched Mr. Smith the elevator, and his attempt to elicit the desired response/reaction from Mr. Smith had failed, when the elevator doors opened Klaveyer showed Mr. Smith into the back of the elevator. LT. Wyns, who was exiting the elevator, looked perplexed but not surprised. Mr. Smith cried out " all I want is my property returned to me". At that point Klaveyer showed over Mr. Smith stating " he's a crackin'" "he's a crackin'". After LT. Wyns stepped off the elevator, and the doors had closed, Klaveyer renewed his grip upon Mr. Smith and leaned his considerable weight into Mr. Smith stating " boy I'll fuck you up like I did that other bug-out and aint nobody going to do shit about it". When the elevator doors opened Klaveyer force merched Mr. Smith to the strip-case/segregation in take area. As Klaveyer force merched Mr. Smith toward the strip cage one of the accompanying officer's (c/o hilton) stuck his foot out in an attempt to trip Mr. Smith as he was being forced into the strip cage. As Mr. Smith was attempting to regain his balance c/o logan yelled out " he tried to kick me" "he tried to kick me". The officers began yelling threats and calling Mr. Smith names. Mr. Smith, seeing through the pretense discerned the reason for it. These officer's actions and/or words were meant to confuse, provoke, and most importantly distract Mr. Smith from the true purpose (an excuse to use excessive force), for as the cell door was closed and the handcuffs were removed c/o logan discharged his O/C spray directly into Mr. Smith's eyes and there. LT. Wyns asked Mr. Smith if he wanted to file a use of force statement he said yes. LT. Ford provided him with a use of force statement. And with eyes burning and in pain Mr. Smith filed his statement.

(Mr. Smith)

November 25, 2020 reviewed the correct reports written

by Sgt Klavenger and C/O Logan (with review Sgt Dill). Klavenger falsified his conduct report by omitting the force he used to march mr. smith from the B-Unit pod/gen to the segregation strip cage. He further falsified his conduct report by alleging that mr. smith kicked him. December 8, 2020, after reviewing all of the relevant security video, RIB chairman LT miller found mr. smith not guilty of kicking Klavenger. Klavenger also failed to document that C/O Logan used OC spray against mr. smith.

Klavenger's failure to document his unprovoked/unwarranted use of excessive force against mr. smith constitutes a violation of the Eighth Amendment to the United States constitution.

C/O Logan falsified his conduct report alleging that mr. smith made a "hocking noise" and/or gathered spit in his mask in preparation to expel it on staff. He made the allegations in a misguided attempt to justify his unprovoked/unwarranted unreported use of (C/O hilton's) OC spray. Realizing that his "hocking" "gathering spit" allegations made no sense, due to mr. smith wearing his covid-19 mask, Logan falsified his conduct report by omitting that he used hilton's OC spray/excessive force against mr. smith. December 8, 2020, after reviewing the relevant security video, LT miller found mr. smith not guilty of the hocking/gathering spit allegations.

Logans use of OC spray against mr. smith, without provocation, and/or Logans failure to document his use of force constitutes a violation of the Eighth Amendment to the United States constitution.

C/O Hilton, giving C/O Logan his OC spray to use, in the unwarranted/unprovoked use of excessive force, against mr. smith constitutes a violation of the Eighth Amendment to the United States constitution.

November 20, 2020 nurse Showman was called to render medical treatment to mr. smith following his being contaminated/sprayed with Oleoresin capsicum (OC) spray. When she arrived mr. smith was pacing the cell, choking, and blinded in pain from the OC spray. When Showman asked mr. smith was he injured he stated yes, he couldn't breathe and he was ~~blinded everything~~ (blinded with pain) from the OC spray. Nurse Showman made no attempt to provide mr. smith with any medical treatment at all. And subsequently falsified her medical exam report, dated November 20, 2020, regarding that mr. smith denied need for treatment.

Nurse L. Showman falsifying her medical Exam Report and/or her failure to provide mr. smith with the adequate medical attention his injuries necessitated constitutes a violation of the Eighth Amendment to the United States Constitution.

November 20, 2020 nurse ~~Shownenfeld~~ Klocinski filed a medical exam report. In her report Klocinski ~~alleged that~~ (admitted) mr. smith stated "I got sprayed in the eyes and I need you to get it out". Klocinski falsified her medical exam report in the following manner and/or for the following reasons: Klocinski falsified her report by alleging that mr. smith's breathing was even and not labored and that his speech was clear. And, by alleging that mr. smith refused to have his vitals (blood pressure, temperature ect...) checked, there would be no medical evidence to contradict her allegations.

Nurse ~~Showman and this~~ Klocinski failure to provide mr. smith with the adequate medical treatment his injuries necessitated and/or by falsifying her medical exam report to thereby deny mr. smith the medical treatment his injuries necessitated constitutes a violation of the Eighth Amendment to the United States Constitution.

Nurse Showman and nurse ~~Klocinski~~ Klocinski were at all times mentioned herein nurses at the TOLEDO Correctional Institution and tasked with providing TOCI inmates adequate treatment her ailments and/or injuries suffered while in the custody of The ODRC and/or TOCI.

16

December 8, 2020, upon his release from segregation, Mr. Smith discovered that the following items, listed on his property receipts, was not included in the property he received: 1) GTL Phone tablet; 1) JP4 music player; 1) JP5 music player; 1) fan; and 1) lamp.

December 8, 2020 Mr. Smith filed an emergency grievance, to the Chief Inspector of the ODRC, Pursuant to OAC 5120-9-31(L). When, as of January 10, 2021, the Chief Inspector failed to respond to his grievance Mr. Smith wrote the Chief Inspector a follow-up letter providing a brief descriptions of his grievances. And when, as of February 14, 2021, the Chief inspector had not responded, to his initial grievance and/or his follow-up letter, Mr. Smith filed another emergency grievance pursuant to OAC 5120-9-31(L). As of this date the Chief Inspector has not responded to any of Mr. Smith's attempts to grievance.

Having been given three attempts to address the issues contained within this complaint and/or having failed to address these issues within the 30-day period prescribed by OAC 5120-9-31(L) the Chief Inspector's Failure constitutes a violation of the First Eighth and Fourteenth Amendments to the United States Constitution,

From March 14, 2020 to February 14, 2021 Mr. Smith was the victim of retaliation for his successful litigation against the excessive force he suffered while in segregation and/or for excercising his Fourteenth Amendment right to due process. Mr. Smith has suffered verbal abuse, physical abuse, and the theft/loss of property amounting to $701.44. Deprevations so egregious that we respectfully contend that the totality of conditions a campaign of harrassment and/or a First constitute a violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Respectfully Submitted

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged herein, except as to those matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Toledo Correctional Institution
This 25 day of June 2021


Signature

6/25/21
Date

Patricia R. Ceglio
NOTARY

PATRICIA R. CEGLIO
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 08-10-2021

NOTARIAL SEAL
STATE OF OHIO